PEOPLE ex rel. TOWN OF PREBLE v. PRIEST et al.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. TAXATION—EQUALIZATION—RIGHT OF APPEAL—NATURE OF EVIDENCE ADMISSIBLE.

On general principles, and in view of the course of legislation (Laws 1859, p. 705, c. 312, § 13; Laws 1874, p. 464, c. 351; Laws 1876, p. 40, c. 49; Laws 1896, p. 853, c. 908, § 175) granting and enlarging the right of appeal from the determination of boards of supervisors in equalizing assessments, the State Board of Tax Commissioners, in receiving evidence on such an appeal, is not bound by the rules of evidence which hold in courts of law, but may receive affidavits without affording opportunity to cross-examine the affiants.

2. SAME—OMISSION OF BANK STOCK—METHOD OF REVIEW.

Under Laws 1896, p. 813, c. 908, § 50, giving boards of supervisors power to equalize assessments, and section 174, p. 853, giving an appeal to the State Board of Tax Commissioners from the decision of the supervisors "in equalization of assessments and the correction of assessment rolls," no appeal will lie to correct any error of the supervisors in not including in the aggregate assessment, to determine the tax rate, the value of any bank stock; mandamus being the proper remedy to correct such an error.

8. SAME—EVIDENCE—REVIEW.

Under Code Civ. Proc. § 2140, providing that a determination of the State Board of Equalization, reviewed by certiorari, may be reversed where there is such a preponderance of proof against it that a verdict of a jury affirming the existence thereof in an action in the Supreme Court would be set aside as against the weight of evidence, the preponderance should be so great that the error would clearly appear to authorize a reversal.

Chase and Houghton, JJ., dissenting.

Certiorari by the people, on the relation of the town of Preble, to review the determination of George E. Priest and others, constituting the State Board of Tax Commissioners, on appeal from the decision of a board of supervisors in equalization of assessments. Confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. & T. E. Courtney (Frank S. Black, of counsel), for relator.
Kellogg & Van Hoesen, for respondent.

SMITH, J. The determination of the state board is challenged by the relator upon four grounds: First, that in making such determination a rule of law affecting the rights of the parties thereto has been violated, to the prejudice of the relator, to wit, that the said board allowed the respondents to make proof of certain facts by affidavits presented, without producing the affiants for cross-examination; second, that the state board committed error in not including in the aggregate assessment of real and personal property, as the basis for the determination of the tax rate, the value of bank stock in the several towns in which such banks were located; third, that the determination of the state board was against the weight of evidence; and, fourth, that the allowance of costs by the state board upon the hearing was excessive, and included one item, at least, improperly.

1. In the notice of appeal from the decision of the board of supervisors, notice was given by the appellant that evidence in addition to the papers and proofs submitted to the board of supervisors on making the equalization might be offered by either party. Pursuant to this notice, the town of Preble produced a certain schedule, purporting to be a list of all the recorded conveyances in Cortland county from December, 1899, to December, 1901. This schedule consisted of a number of large sheets of paper, upon which appeared in successive columns the name of the grantor, the name of the grantee, the lot number, the consideration stated in the deed, and the number of acres conveyed. Oral evidence was then offered by the relator as to the value of property in the town of Preble and in other towns of the county, and thereupon the relator rested. The respondents did not reach their case until the afternoon of the last day upon which the state board could sit in Cortland. Some evidence was given by the respondents upon that day. At the adjournment of the proceedings upon that day, an order was entered that the respondents might present upon the adjourned day, at Albany, the affidavits of the

assessors of the various towns in explanation of the facts appearing in the schedule presented by the relator, and that such affidavits should be served upon the relator's attorneys in sufficient time, so that the relator might have opportunity to answer the same. To this no objection was then made. Thereafter, however, and before the hearing at Albany, the respondents were given notice that objection would be made to the admission of such affidavits in evidence upon said appeal. Such objection was made upon the final hearing which was held at Albany, was overruled, and the affidavits were admitted as part of the evidence in the case. Assuming, for the argument, that these affidavits were upon material facts, if they were erroneously admitted the relator should prevail upon this appeal.

The respondents' answer to this first ground of challenge is that this review by the state board is not such a judicial proceeding as requires the application of the rules of evidence which hold in a court of law. This answer we think sufficient. In the first place, the proceeding is one in which it would be impracticable to apply the strict legal rules of evidence. Individual property rights are affected only indirectly through the tax which must ultimately be paid upon the equalized valuation. The review upon appeal from the determination of the board of supervisors, though primarily a right of appeal only, is nevertheless in the nature of an original investigation. The question to be determined involves, to an extent, the value of every piece of real property in the county. To establish those valuations by evidence admissible only in a court of law would make the proceeding so cumbersome as to make it practically impossible to prosecute, and so costly as to take from the town all benefit of a favorable adjudication.

Again, the history of the legislation giving and governing this right of appeal makes clear the proposition that this was never intended as a strictly judicial review, but was only intended as a summary review without the prescribed limitations of strict legal procedure. Prior to 1859 the determination of the board of supervisors in equalizing assessments was final. By section 13 of chapter 312, p. 705, of the Laws of 1859, an appeal was given to the Comptroller from the determination of the board of supervisors of a county in equalizing assessments. The method of procedure upon that appeal was by the statute thus prescribed: "The Comptroller shall hear the proofs of the parties which may be presented in the form of affidavits or otherwise, as he shall direct." This right of appeal to the Comptroller was altered by the passage of chapter 351, p. 464, of the Laws of 1874, in which it was provided that the appeal authorized by the former act should be made to the State Assessors instead of to the Comptroller, and it was therein provided:

"The State Assessors are vested with and shall exercise all the powers and discharge all the duties that by said act and the amendments thereof are vested in or imposed upon the Comptroller, in lieu of said Comptroller."

By chapter 49, p. 40, of the Laws of 1876, more specific provision was made for the hearing of such appeals by the State Assessors, and it was therein provided that it should be the duty of the State Assessors "to prepare rules and regulations in relation to bringing such appeals and the hearing or trial thereof which shall be submitted

to the Comptroller for his approval, and when so approved shall be
the forms, rules and regulations of said Board of Assessors, and be
filed in the office of the Comptroller." Opposite the first sentence of
section 3 of that act is the marginal note, "Nature of evidence," and
the section reads, "On every such hearing or trial the evidence shall
in part relate to the assessment and full and true value of real and
personal property. * * *" This continued to be the law until the
passage of the general tax law, which is found in chapter 908, p. 853, ·
of the Laws of 1896. Section 175 of that act reads, in part, as fol-
lows:

"Appeals, How Conducted. The Board of Tax Commissioners may prepare
a form of petition and notice of appeal from decision of the board of super-
visors in the equalization of assessments, and rules and regulations in rela-
tion to bringing such appeals to a hearing or trial thereof. Such rules shall
provide for a hearing on the papers and proofs submitted to the board of su-
pervisors on making the equalization in case the parties so desire; and in
case the notice of appeal so specifies, for the taking of additional evidence
offered by either party. * * *"

It will be noticed that whereas by the act of 1876 the State As-
sessors were required to make rules and regulations subject to the
approval of the Comptroller, no such limitation is imposed upon the
State Board of Tax Commissioners under the law of 1896. That
board was left free to make such rules and regulations as it might
see fit. The relator argues that in making rules "for the taking of
additional evidence offered by either party" the state board can only
provide for the taking of legal evidence. In support of this argu-
ment are cited certain cases in which it is held that the proceedings
in those cases are in their nature judicial, and that the specification
of proofs required and evidence permitted means legal proofs and
legal evidence. None of those cases, however, refer to such a pro-
ceeding as 'is here under review, nor do I think that the reasoning
is applicable thereto. Confessedly, up to 1874 the Comptroller was
authorized "to hear the proofs of the parties which may be presented
by affidavit or otherwise, as he shall direct.". By the act of 1874,
this right of appeal was given to the State Assessors, who had the
same power as had the Comptroller, so that up to 1876, at least,
from 1859, for a period of 17 years, the Comptroller or Board of As-
sessors, to whom the appeal was allowed, might determine both the
nature of proceeding and the nature of the evidence by which the
proofs were to be made, unlimited by the rules which govern the ad-
mission of evidence in judicial proceedings. In 1876 the law was
changed, and the State Board of Assessors were then required "to
prepare rules and regulations in relation to bringing such appeals and
the hearing or trial thereof, which shall be submitted to the Comp- ·
troller for his approval.". In that same act, in section 3, it is pro-
vided, "On every such hearing or trial the evidence shall in part re-
late to the assessment and full and true value of real and personal
property." Is it claimed that at this point there was a radical change
of the procedure permitted upon such appeals, and that the rules and
regulations to be prescribed by the state board must prescribe for
such evidence only as would be admissible in a court of law? Such

a change would, in my judgment, be marked by clear and unmistakable language, which is here wanting; and, moreover, we have authority that after the passage of the act of 1876 the State Assessors still had the right to receive evidence which would be inadmissible in a court of law. People ex rel. Schabacker v. State Assessors, 47 Hun, 450. If their right to control their procedure was not limited by the act of 1876, it certainly was not by the act of 1896. By the act of 1876 the State Assessors were given power to prepare rules and regulations in relation to bringing such appeals, and the hearing or trial thereof. In the act of 1896 the state board were required to prepare rules and regulations "in relation to bringing such appeals to a hearing or trial thereof," and it was provided that "such rules shall provide * * * for the taking of additional evidence offered by either party." The relator argues that the use of the word "evidence" in this provision of the statute has the magical effect of taking from this board of review the right to regulate their proceedings and the nature of the proof, which had existed for 37 years unquestioned. Such a deduction is, to my mind, wholly without warrant. As I have indicated, the word "evidence" was used as well in the act of 1876 as in the act of 1896. The Legislature would not have failed to indicate by language positive and explicit any intention upon its part to change the nature of the review authorized by the statute from a summary and informal review to a strictly judicial review. In all these statutes is indicated to my mind a consistent purpose to make this review a summary one, under the absolute control of the Comptroller, the State Assessors, or the State Board of Tax Commissioners—to whichever was given the right of appeal. They have always had, and now have, as I think, the full right to control the manner of the hearing before them, and what proofs shall be presented upon the questions under review. In People ex rel. Schabacker v. State Assessors, supra, Judge Alton Parker, in referring to the statutes regulating this right of review, down to and including the act of 1876, says:

"It seems to be apparent, from the statutes thus briefly alluded to, that the Legislature intended to provide a convenient and summary method of review in cases where the board of supervisors, arbitrarily so equalized the assessments between the several towns as to produce manifest injustice. The State Assessors were designated in 1874 as the tribunal to review such equalization, probably because of their familiarity with the subject of equalization, and the assessments in the several towns and counties in the state. By a statute then in existence it was made the duty of the assessors to visit officially every county in the state at least once in two years, and they were authorized to examine the supervisors, assessors, and others on oath as to the values of real estate in the counties so visited. Because of the information thus acquired in the discharge of their duties, they were the better fitted to speedily dispose of the questions necessarily arising on appeal from the equalization made by the boards of supervisors. The question presented on appeal from equalization made by boards of supervisors is at best a very difficult one to dispose of. Individuals differ very widely, as a rule, in placing values upon real estate—especially so when the question involved is one of assessment. It seemed to be proper, therefore, to take the course adopted by the Legislature in authorizing proof to be made by affidavit, or in such other form as the State Assessors might see fit to prescribe in view of the experience had by them in work of such a character. To have adopted the

rule that hearings before the assessors should be governed by rules in force in trial of actions before courts would necessarily have resulted in protracted and expensive litigation, and therefore it was provided that the assessors should make the rules and regulations governing the bringing of appeals and the hearing or trial thereof.

"It is apparent from the statutes cited that, in the matter of the hearing and determination of appeals from equalization made by boards of supervisors, the State Assessors clearly came within the rule laid down by the Court of Appeals in the case of People ex rel. Flanagan v. Police Commissioners of New York, 93 N. Y. 97, to wit: 'They are a subordinate and an administrative tribunal, * * * and not a court limited in its functions, within the provisions of the Constitution. Their action must be considered, having in view the special powers conferred, and the purposes for which their organization was intended, and not confined by the application of strict legal rules which prevail in reference to trials and proceedings in courts of law.' "

2. By chapter 550, p. 1349, of the Laws of 1901, it is provided that shares of stock of banks should be assessed upon the basis of capital stock, surplus, and undivided profits; that upon such assessed valuation a tax of 1 per cent. shall be paid, which shall be distributed to the tax district in which the bank is situated. This tax is to be in lieu of all other taxes upon such bank stock. In determining what part of the state and county tax should be paid by the respective towns, the board of supervisors entirely omitted the bank stock; and the rate was determined by ascertaining the ratio of the amount of real and personal property in the relator town, as equalized, to the amount of real and personal property of the county, in both cases excluding the bank stock. The relator now claims that that bank stock should have been included in the aggregate valuation of the personal property in the county, which would reduce the percentage of the state and county tax payable by the town of Preble. The argument is that in the city of Cortland, for instance, upwards of $470,000 of bank stock was not considered in determining what part of the state and county tax should be paid by the city of Cortland; that the city of Cortland, nevertheless, had the advantage of the 1 per cent. upon that valuation of bank stock, so that the percentage of the state and county tax paid by the real and personal property, other than bank stock, in Cortland, was considerably under the percentage paid by property in the town of Preble. The answer of the respondents is that, if this valuation of bank stock had been included in the personal property taxable in the city of Cortland in determining the proportion of the state and county tax to be paid by the city of Cortland, an injustice would be done to the other taxpayers in the city of Cortland, because, as bank stock pays only 1 per cent. tax, the other property in the city of Cortland would be required not only to pay its proportion of the tax, but an additional sum to make up the deficiency between 1 per cent. and the amount which would otherwise be paid by the owners of the bank stock, were they assessed for such stock as upon other personal property. It thus appears that in either case—whether the bank stock be included in determining the ratio of tax to be paid by the several towns, or whether it be excluded—an injustice is done to some taxpayers.

This question, however, is not, I think, before us for consideration. The board of supervisors is authorized by section 50 of the tax

law (Laws 1896, p. 814, c. 908) "to increase or diminish the aggregate valuations of real estate in any tax district by adding or deducting such sum upon the hundred as may, in its opinion, be necessary to produce a just relation between all the valuations of real estate in the county." This is an act preliminary to, and distinct from, the act of apportioning the tax upon the aggregate valuation of personal property and real property as thus equalized. By section 174, p. 853, of the tax law, the appeal given to the State Board of Tax Commissioners is from the decision of the board of supervisors "in the equalization of assessments and the correction of assessment rolls." Such corrections, thus made the subject of appeal, are, as I understand it, the corrections made by the board of supervisors pursuant to section 50 of the tax law. Upon that appeal the state board is authorized to "determine whether any, and if any what, deductions ought to be made from the aggregate corrected value of the real and personal property of such tax district as made, and to what tax district or districts in such county the amount, if any, shall be added." In view of the nature of the determination from which the appeal is given, I think the authority of the state board must be read to authorize deductions from the aggregate corrected value of the real and personal property of such tax district only by reason of the equalization made by the board of supervisors, found by the state board to have been improperly made. For instance, if the board of supervisors had determined the rate of tax by omitting entirely the personal property, I apprehend that the remedy of a town would not be upon appeal to the state board, but, rather, by a writ of mandamus. So, if error has been committed by the board of supervisors in failing to include in this aggregate valuation of the property of the county the valuation of these bank shares, this is not an error of equalization, nor an error in the correction of the rolls, which errors alone are made the subject of review upon appeal to the state board.

3. The third ground of challenge presents simply a question of fact. This court is authorized to reverse the determination of the state board only if upon all the evidence there was such a preponderance of proof against the existence of the facts there determined that the verdict of a jury affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury, would be set aside by the court as against the weight of evidence. Code Civ. Proc. § 2140. Upon the question of value there is always a wide divergence of opinion, and it is only possible to determine the question approximately. Upon this question, where there is a conflict of evidence, courts have seldom disturbed the findings of juries. In order to set aside their conclusions, the preponderance should be so great that the error of their conclusions should be very clearly made to appear. We have given careful consideration to the evidence presented by the record, and are unable to find a preponderance of evidence in favor of the relator's contention sufficient to justify us in disturbing the conclusion of the state board upon this question.

4. The fourth ground of challenge is as to the costs awarded by the state board. The commissioners certified the reasonable costs and expenses of the appeal to be $1,000 for the appellant, and $1,000

for the respondents, which was made up in each case of $500 for services, $427.50 for disbursements, and $72.50 for stenographer's fees. We see no reason for questioning the fairness of the allowance for counsel fees or for disbursements. It appears that, by reason of a mistake, the stenographer's fees were specified in both bills, when they should only have been once allowed. It was stated upon the argument, and not denied, that the stenographer had in fact been paid by the respondent's counsel. The error then appears to have been in favor of the relator, and one of which it cannot complain.

The determination of the State Board of Tax Commissioners should therefore be confirmed, with $50 costs and disbursements. All concur, except CHASE and HOUGHTON, JJ., who dissent.